STATE OF VERMONT

ENVIRONMENTAL COURT

|                     |   |                          |
|---------------------|---|--------------------------|
| Appeal of Stohl     | } | Docket No. 98-6-04Vtec   |

## Decision and Order

This appeal came on for merits hearing on June 3, 2005, Thomas S. Durkin, Environmental Judge, presiding. Appellants Jocelyn and Donald Stohl appeared at the hearing and were represented by Robert R. Bent, Esq. Appellee-Applicants Kristen and Julia Haupt also appeared at the hearing and were represented by Peter Nowlan, Esq. Paul S. Gillies, Esq. entered his appearance for the Town of Braintree (Town), and Julie Tower-Pierce, Esq., from Attorney Gillies's office, attended the merits hearing, so as to monitor the proceedings on behalf of the Town.

The following neighbors appeared as Interested Persons in this proceeding, some of whom testified at the hearing: Bruce N. and Sherry L. Tabor, Douglas and Patricia Lawrence, Steve Brown, and Cindy Brown (hereinafter sometimes referred to collectively as the "Interested Persons").

Mr. and Mrs. Stohl appealed the decision of the Braintree Zoning Board of Adjustment (ZBA), dated June 3, 2004, which granted conditional use approval to the Haupts for the construction of "a 32' by 50' garage, to be used as a workshop and storage of equipment for use in their logging business, Iron Horse Logging." The ZBA classified the Haupts' proposed new garage "as an accessory building for Agricultural and Forestry work." The DRB determined that this was allowed under Article 4.3(b)(20) of the Town of Braintree Zoning Ordinance (Ordinance).

By Decision filed April 8, 2005, this Court ruled in response to the parties' pre-trial cross-motions for summary judgment that the Haupts' pending application was

not barred by the doctrines of res judicata or collateral estoppel. The Court also determined in its April 8th Decision that Appellee-Applicants' proposed additional garage was more appropriately classified as a "home enterprise," as that term is defined in Ordinance § 5.13. The consequence of these determinations was to limit the scope of this appeal to the following Questions contained in Appellants' Statement of Questions (paraphrased by the Court): [1]

3. If the Court decides to grant Appellees their requested permit, should it be conditioned upon relocating the proposed garage farther into Appellees' property, "where it would minimize the impact on neighboring properties?"

4. Does the proposed garage negatively affect the character of the neighborhood?

5. Does the proposed garage and its proposed use negatively affect traffic on the neighboring roads and highways?

**Findings of Fact**

Based upon the testimony of witnesses and the exhibits admitted at trial, the Court makes the following findings of fact:

1. Kristin and Julia Haupt (hereinafter Appellee-Applicants) own a 73.3-acre parcel of land off of Riford Brook Road and within the Town of Braintree Rural District II zoning district (RD II District). Located on the property are Appellee-Applicants' single family residence, a garage where Mr. Haupt stores some tools and equipment and where Mrs. Haupt operates her tanning business, a sugar house, numerous dog houses, and dogs that Mr. Haupt uses to hunt bears. Testimony also located a "run down" sugar house, a pen in which a neighbor raised pigs, a well, an underground septic system and a swimming pool on Appellee-Applicants' property, but the specific location of these items was not identified on any site map provided to the Court.

---

[1] The Court's paraphrasing of the remaining Questions retains Appellants' numbering. Question 6 is also eliminated from the Court's consideration, since that question was dependent upon the Court adopting the DRB's use classification under Ordinance § 4.3(b)(20)

2. Appellee-Applicants propose to build a 32-foot by 50-foot, three-bay garage to be used in connection with Mr. Haupt's logging business: Iron Horse Logging. He intends to use the proposed garage for the storage and service of his equipment, including skidders, bulldozers, a tractor, a rototiller, a brush hog and chainsaws. In a subsequently filed narrative, Mr. Haupt also disclosed that he intended to store two personal vehicles in the proposed garage.

3. Mr. Haupt currently stores some (but not all) of his logging equipment on his home property. He will often leave his skidder and other large pieces of equipment at job sites, rather than transporting the equipment home. He currently repairs some of his equipment on job sites, but also works on some of his equipment in the area where he proposes to build his new garage. He uses tools and repair equipment stored in his existing garage, but that garage is not large enough to house his logging equipment. When repairing this equipment, Mr. Haupt is therefore required to do his repair work outside, sometimes in the rain. The proposed garage would allow him to work on his equipment while protected from the elements and would allow him to store equipment that he currently leaves on job sites.

4. Appellants asserted that Mr. Haupt has used his property to repair vehicles and equipment owned by others, and that he intends to use the proposed garage to continue his repair work for others some time in the future, after he retires from the logging business. Mr. Haupt denied Appellants' allegations. The unrefuted evidence is that Mr. Haupt does not have a present intention to conduct such use in the proposed garage and has not applied for a permit to do so.

5. Appellee-Applicants' proposed garage would be located approximately seventy-five feet from the center line of Riford Brook Road and fifty feet from the side boundary line they share with Mr. and Mrs. Tabor to the east. These setbacks conform to the minimum setback requirements for the RD II District.

6. The portion of Appellee-Applicants' property that is bordered by Riford Brook Road is relatively flat and cleared of trees. However, as one travels away from the road, Appellee-Applicants' land rises sharply from the rear of the proposed garage to their residence, located about 1,500 feet up a steep driveway that runs southerly from Riford Brook Road.

7. The Haupts have already commenced some site clearing for their proposed garage, including leveling the site and raising it with gravel Mr. Haupt brought in from off site. There was no suggestion made during the trial that this site work constituted a zoning violation. This site work did, however, provide the Court with a clear view during its site visit of the exact location of the proposed garage and the height of the area upon which it would be built.

8. The proposed garage will be a prominent building in the neighborhood, given that its height will be twenty-eight feet and that it will be located upon a raised gravel bed. The evidence adduced at trial and the site visit causes the Court to conclude that the proposed garage will be the largest building on property belonging to either Appellee-Applicants or their neighbors. Its proximity to the road, in the cleared portion of Appellee-Applicants' property, makes screening the building impracticable at least at its current location. Its design will make it easy to identify as a commercial-type structure in this rural residential neighborhood.

9. Appellants' home is located directly across Riford Brook Road from the proposed garage. It is also located relatively close to the road, also being about seventy-five feet from the centerline of the road. Mrs. Stohl works outside their home, as a Vermont State Trooper. Mr. Stohl is an accountant and operates a business from his home. Some accounting clients occasionally visit his home office.

10. The neighborhood surrounding Appellee-Applicants' property is generally rural and residential in character. Most properties are occupied as primary residences; many have an associated home occupation use. Some neighboring properties have an

accessory structure, such as a barn or a garage. A couple of nearby barns, once used for farming, are now put to alternative uses, such as storage. However, there was no evidence suggesting that other nearby properties are put to the multiplicity of uses that currently exist or are proposed for Appellee-Applicants' property.

11. When a skidder or other logging equipment is delivered to Appellee-Applicants' home property, the trailer upon which the equipment is transported at times drives off the traveled portion of Riford Brook Road and onto Appellants' front lawn, particularly when the trailer is traveling from the west. This practice leaves tire marks and divots on Appellants' front lawn from time to time. The ZBA granted conditional use approval with several conditions, including the condition that "all vehicles will enter and exit the Haupt property from the easterly direction . . .," so as to minimize the chance of damage occurring to Appellants' front lawn. It was suggested that the Court impose a similar condition, should it determine that the project warrants conditional use approval.

#### Discussion

Pursuant to the Court's Decision of April 8, 2005, Appellee-Applicants' proposed additional garage should be regarded as a "commercial" structure, Ordinance § 4.3(b)(13), necessitating the Court to conduct conditional use review of the proposed structure under Ordinance § 6.12. See also 24 V.S.A. § 4414(3). In doing so, we are required to render determinations on whether the proposed structure will result in an undue adverse effect on specific conditional use criteria.

No party challenged the following four conditional use criteria contained in Ordinance § 6.12: criterion a. (impact on existing or planned community facilities); criterion d. (compliance with zoning ordinance); criterion e. (utilization of renewable energy resources) and an un-lettered criterion regarding the treatment of hazardous materials. Since they were not referenced in Appellants' Statement of Questions,

consideration of these criteria has not been preserved for review in this appeal. <u>In re Appeal of Murray</u>, Docket No. 227-12-98, slip op. at 1 (Vt. Envtl. Ct., Mar. 1, 1999) (citing <u>Village of Woodstock v. Bahramian</u>, 160 Vt. 417, 424 (1993)). Thus, we only analyze whether Appellee-Applicants' proposed structure will result in an undue adverse effect on the following criteria:[2]

b.      <u>Character of the area affected</u>: As noted in the Findings, above, the area immediately surrounding Appellee-Applicants' property is rural and residential in character. Riford Brook Road is a dirt road, not unlike the back roads where many Vermonters reside. The properties in Appellee-Applicants' immediate neighborhood[3] are almost all used as primary residences for their owners, some of whom conduct an occupation within their home. However, none of the home properties in Appellee-Applicants' neighborhood have the multiplicity of uses to which the Haupts put their property. The proposed garage will add a sixth use to their property, taking into account the tanning salon, sugar house, bear dogs, pre-existing garage and primary residence.

None of Appellee-Applicants' pre-existing uses is alleged to be nonconforming or unlawful; those prior uses cannot be regulated further in this proceeding. Our review of the proposed garage must take into context what other uses are established in this area, including on Appellee-Applicants' property.

The Haupts' proposed garage will be one of the largest structures in the immediate neighborhood. Its design as a commercial building will be readily apparent, as it will appear dissimilar to the homes and barns that occupy the nearby properties. It

---

[2] We've maintained the lettering for the remaining criteria that is found in the Ordinance.

[3] In using the term "immediate neighborhood," the Court includes not only the properties immediately abutting Appellee-Applicants', but also other properties leading to Appellee-Applicants' property from Vermont Route 12A, which appears to separate Appellee-Applicants' neighborhood from other surrounding neighborhoods.

will be one of the tallest buildings in the immediate neighborhood, and will appear even taller, due to its location on a raised gravel bed.

Appellee-Applicants have not proposed any sufficient screening, either by new plantings or by relocating the structure behind some of the existing trees on their property. The Court recognizes that locating the structure farther back on the property may be difficult, given its steep grade. But the absence of screening and the prominence of this structure, unique to this neighborhood, leads the Court to conclude that as currently designed and sited, its construction and proposed use will have an undue adverse effect on this neighborhood, warranting denial of the requested conditional use approval.

Appellants suggest in Question 3 that this Court may approve Appellee-Applicants' proposed garage, conditioned upon relocating it deeper into their property, "where it would minimize the impact on neighboring properties." We believe such a condition is inappropriate for the Court to impose. Our jurisdictional authority is limited to review of an application properly submitted to this Court on appeal. The applicant, and not the Court, is the most appropriate entity to present modifications to an application, since it is the applicant and their neighbors who know the subject property best. In this case, Appellee-Applicants expressed their opinion that it would be impracticable to relocate their proposed garage to the wooded portion of their property. We have therefore reviewed the garage as presented at trial and find that it will have an undue adverse effect on the character of the area.

c.    <u>Traffic on roads and highways in the vicinity</u>: Appellee-Applicants assert that the proposed structure will not add to the traffic on the nearby roads and highways, since Mr. Haupt sometimes stores and repairs his logging equipment on their property. Appellants do not contest this assertion, but assert instead that Appellee-Applicants' prior use has caused occasional damage to their front lawn. There was no other

testimony offered that the proposed garage and its use would cause a material adverse impact on the neighboring roads and highways.

This Decision will not result in conditional use approval being granted, but if it were, the Court would consider a condition prohibiting vehicles that transport Mr. Haupt's logging equipment from traveling upon or damaging his neighbors' property.

In light of the determinations above, the Court does not grant conditional use approval for Appellee-Applicants' proposed garage. While this Decision concludes the proceedings before this Court, nothing contained in this Decision is to be regarded as prohibiting Appellee-Applicants from submitting a subsequent application, provided that it is substantially different from the present application, particularly in relation to the design, location and screening of the proposed structure, and the ability of vehicles delivering Mr. Haupt's logging equipment to avoid causing damage to their neighbors' property.

## Conclusion

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the decision of the Braintree Zoning Board of Adjustment granting conditional use approval, dated June 3, 2004, is **REVERSED** and conditional use approval is hereby **DENIED**.

Done at Berlin, Vermont, this 31st day of January, 2006.

_____
Thomas S. Durkin, Environmental Judge